BERMAN v. VIGLIOTTI.

1. Fraud—Burden of Proof—Evidence—Highway Frontage.
   Plaintiff failed to sustain burden of proof of fraudulent misrepresentations as to realty he had contracted to purchase, where evidence shows that the fact it was to have a frontage on a widened State highway was an important and valuable part of its value and it was shown plaintiff relied upon representations to the effect that such frontage would be had, because State had purchased intervening land, whereas after contract was entered into the State changed its policy and offered the intervening land for sale and did not provide the frontage to land involved, there being no showing that the statements, when made, were not then correct.

2. Appeal and Error—Findings—Common Pleas Court—Great Weight of Evidence.
   Finding of circuit court that judgment of common pleas court in action to recover down payment under land contract which plaintiff rescinded because of alleged fraudulent misrepresentations was not against the great weight of the evidence is not disturbed on appeal from review by circuit court.

References for Points in Headnotes
[1] 23 Am Jur, Fraud and Deceit § 114.

3. Same—Circuit Court—Common Pleas Court.
    Review by the circuit court of the judgment of the common pleas
    court is not a trial *de novo* (CL 1948, § 728.4, as amended by
    PA 1949, No 149).

Appeal from Wayne; Murphy (George B.), J. Submitted June 5, 1953. (Docket No. 69, Calendar No. 45,796.) Decided October 5, 1953.

Action by Julius Berman against Joseph M. Vigliotti and wife for amount of payment made on real estate transaction after rescission. Judgment for defendants. Affirmed on review to circuit court. Plaintiff appeals. Affirmed.

*David I. Hubar,* for plaintiff.

*David S. Levi,* for defendants.

REID, J. Plaintiff brought suit in the common pleas court for the city of Detroit to recover $1,000 down payment on an agreement for purchase and sale of real estate, which agreement plaintiff rescinded because of claimed fraud. The common pleas court found the fraudulent misrepresentations not proven and rendered a judgment for the defendants. Plaintiff appealed to the circuit court, which found that the judgment of the common pleas court was not against the great weight of the evidence, that there was no reversible error, and affirmed the judgment of the common pleas court. From the judgment of the circuit court, plaintiff appeals.

On or about March 15, 1951, plaintiff signed an offer to purchase real estate and on March 16, 1951, the defendants signed an acceptance of the written offer to purchase. The lands in question are described as lots 48 to 249, inclusive, except for lot 118 of Super Van Dyke subdivision, being a part of the northwest 1/4 of section 15, town 1 north, range 12

east, Warren township, Macomb county, Michigan. Defendants, the owners of the land, employed Mr. Frank J. McIntyre as their agent to make sale of said property. Mr. McIntyre got in contact with plaintiff, who was an experienced dealer in real estate, and in order to induce plaintiff to buy the land, exhibited to plaintiff a plat of said lands, exhibit No 1. McIntyre represented to plaintiff that lots 1 to 47 of said subdivision had been sold to the State highway department and that some of the lots in question in said subdivision had been platted to front on Van Dyke avenue. It appears from the plat that lots 1 to 47, inclusive, taken together, constitute a strip of land adjacent on the easterly side of Van Dyke avenue and fronting on Van Dyke avenue, and together with the alley at the rear of said lots 1 to 47 inclusive, being in the ownership of the State highway department, indicated that the State highway department intended to widen Van Dyke avenue so that lots 1 to 47 inclusive together with the alley east of those lots, would be lands used by the State highway department in widening Van Dyke avenue, leaving some lots which had been platted to front northerly or southerly on streets intersecting Van Dyke at right angles, that would be adjacent to and have frontage on Van Dyke also. The latter mentioned lots easterly of the alley east of lots 1 to 47 were marked for the most part with lines on exhibit No 1 to show that they had been replatted to front on Van Dyke avenue, as widened by the inclusion of the lots 1 to 47, inclusive, and the alley. It is to be inferred that plaintiff claims that defendants knew when dealing with plaintiff that the State of Michigan had changed its policy and that it no longer intended to use lots 1 to 47, inclusive, for the widening of Van Dyke avenue and the State was offering to sell said lots 1 to 47, inclusive, to private purchasers, which

changed policy would cause that the remaining lots, namely, those lots that are described as being sold or in the offer and agreement to sell, would have no frontage whatever on Van Dyke avenue, the front on Van Dyke being the important and valuable part of the whole tract which is covered by plaintiff's accepted offer to buy, exhibit No 2.

To substantiate the falsity of the representations that the lands in question being bought fronted on Van Dyke, among other things plaintiff testified as follows:

"*Q.* But, were you talking about your deal with that [*i.e.*, exhibit No 1] in front of you?

"*A.* Yes, all the time.

"*Q.* Was there any indication about what had happened to the land fronting on Van Dyke?

"*A.* No, not until after I purchased it. Mr. McIntyre came in there. I don't want to say the word loudly. He said, 'This S. B. Now he tells me the frontage is sold. Now, he tells me that it is sold to the State; that the State is selling the property.'

"*Q.* You will notice from exhibit 1, there is a marking across there, 'Sold to the State of Michigan;' was that on there at the time—

"*A.* It was.

"*Q.* And, was that in your conversation; was that confirmed by Mr. McIntyre?

"*A.* It was.

"*Q.* Did you notice the white marks?

"*A.* Replat of the lots facing Van Dyke, yes.

"*Q.* And, was that on the plat when you received it?

"*A.* It is the only plat I had.    *   *   *

"*Q.* (By Mr. Maddin [attorney for plaintiff]) What was said by Mr. McIntyre, if anything, about that land fronting on Van Dyke?

"*A.* Well, it is assumed between us, being real estate minded, and it appeared that it was sold to the State, lots facing this street would be frontage, and it is platted on this plat.

"*Q.* It is so shown? You, as a real estate man, recognized by the diagonal lines that were inserted in the plat before you got it?

"*A.* That's right.

"*Q.* That it was so represented?

"*A.* It shows the replat of the lots facing Van Dyke.

"*Q.* Does land facing on Van Dyke have a different value, in your opinion as a real estate man, than land on the interior?

"*A.* Well, it is so ridiculous, pay $50,000 for land on the side without sewer and water.

"*Q.* Unless you had the business frontage?

"*A.* Unless you had the business frontage; that was where the value lies; not on the inside. The business frontage is where the value lies; that is a well-known fact.

"*Q.* Would you have bought this land if it was not so represented to you that there was Van Dyke frontage as shown on exhibit 1?

"*A.* Absolutely not.

"*The Court:* How wide was Van Dyke at that time?

"*A.* Like it is now. * * *

"*Q.* (By Mr. Maddin): Witness, you said that shortly after this transaction was consummated or sometime after, you had a conversation with Mr. McIntyre about this land that had been sold to the State of Michigan?

"*A.* Yes.

"*Q.* What was that conversation?

"*A.* He come in the office and he said, 'Mr. Vigliotti'—give him a name, and he said, he told, just told me this minute, just told me, *didn't tell me before,* that the land was sold to the State; that the State was selling the land. I never knew it." (Italics supplied.)

Exhibit No 2, the plaintiff's offer to purchase and acceptance thereof, nowhere contains a warranty that any of the lands mentioned in the offer to pur-

chase front on Van Dyke avenue, and the declaration does not count upon any partial failure of consideration, merely upon falsity or fraudulent misrepresentation made knowingly by Mr. McIntyre, and no partial failure of consideration was proven.

There is nowhere in the testimony of plaintiff, any showing that Mr. McIntyre, the agent, or the defendants themselves, knew at the time of the making of exhibit No 2, and acceptance, that the State had changed its policy or was offering to sell, or was about to offer to sell, the intervening lots, 1 to 47, inclusive. Conversation to that effect was addressed to Mr. Berman, plaintiff, by Mr. McIntyre, apparently some 60 days after the making of the offer to purchase and the acceptance and the payment of the $1,000 consideration.

There is no showing that the statements claimed by plaintiff to be false representations were not correct statements of the situation at that time. A change in the policy of the State as to sale of the frontage lots instead of use for highway purposes occurring after the deal was made, could not, of course, have a retroactive effect to render McIntyre's statements fraudulent. Plaintiff failed to make a showing sufficient to be a basis of judgment in his favor.

The circuit judge found that judgment of the trial court was not against the great weight of evidence, with which finding we concur. Under the statute, CL 1948, § 728.4, as amended by PA 1949, No 149 (CLS 1952, § 728.4, Stat Ann 1951 Cum Supp § 27.-3654) appellant was entitled to a review but not to a trial *de novo* in circuit court.

The judgment of the trial court is affirmed. The case is remanded to the circuit court with instructions to remand to the trial court for such further

action as may be found necessary. Costs to defendants.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.